Counsel, you may proceed. Please report, Counsel. My name is Todd Schroeder. I represent Lisa Critchfield. Issues today are the manifestation date of a repetitive trauma claim. We have another interesting jurisdictional issue that went up to the circuit court initially in Jersey County. There was an order in August of 2013 indicating a reversal of the Commission's decision concerning the manifestation date. Petitioner had a one-time visit four years prior to the filing that we're here today on concerning a pain in her shoulder. Fast forward four years and on July 5, 2010, she reported to her supervisor that she was having extensive problems in her shoulder with performing ultrasounds and echocardiograms. She reported this to her supervisor and then began treatment. I would ask that the order of the circuit court in Jersey County from August 2013 be affirmed. I believe that the issue of manifestation date, that the proper manifestation date was January 4, 2010, the date on our application. I think Durand, Oscar Meyer, and Peoria Bellwood all lead us to that finding. I think if we find otherwise, I don't believe that any petitioner can have a prior diagnosis and then ever have an aggravation of a pre-existing condition. I think the differences when we came to 2010 are drastic. I think that there was additional problems that were found in 2010 with her elbow and then she had significant injuries. It wasn't until 2010 that her injury became debilitating. It was not debilitating in 2006. I wholeheartedly agree, Your Honor, and I believe that in 2010 is when the breakdown occurred. Moving on to the next issue is the finding of the commission on remand that there was not a causation in this case and that did not arise out of it. What's wrong with Dr. Palletta? Why couldn't the commission rely on Dr. Palletta? I think that the combination of relying on Dr. Palletta is one of the few cases that I've had where the doctor actually went through the procedure himself. He has firsthand knowledge of how these procedures are done and he's in a unique position as an orthopedic surgeon to observe the body mechanics during the same procedure. That doesn't happen very often in our practice where the foundation for the treater's opinion is firsthand experience. Well, the commission gave little weight to Palletta's opinion, correct? Yes, Your Honor. It relied on Emanuel. It relied on Emanuel. But Palletta was the operating physician and Emanuel wasn't. That is correct. Palletta was the treating physician. And furthermore, there was a video that Emanuel relied upon and the video showed a 90-pound elderly woman having the procedure performed. The testimony, when you look at Petitioner's testimony, she reports to her supervisor because she's got burning pain because she's doing these echocardiograms and ultrasounds with her arm out. And if you look at Dr. Emanuel's testimony, he firmly believes that she never gets to 90 degrees during these procedures. And that's based upon the video. Well, the commission had all these, you know, various facts presented on either side. They faulted Palletta because he didn't know that she was involved in running and weightlifting. I mean, you can argue that Emanuel relied on a video that didn't adequately show what she did. But they had all that and they went with Emanuel. I think it's more than – I think this is, and we get right to the heart, against the manifest weight. And the heart of the matter is that, you know, by Petitioner's symptomatology, we have a specific breakdown that occurs whenever she can no longer do her job because of burning pain in her shoulder. And I think that even looking at just that alone, that was disregarded. That was disregarded by Emanuel, disregarded by the commission. I think going further beyond that, I think there's testimony in the record that she had ceased weightlifting because it was causing her pain in her shoulder. What about the long-distance running? The long-distance running is something that she did. However, when you look at how often she did the running compared to how often she was working, I think that that leads more credence to not only the answers that Emanuel gave on cross-examination as far as symptomatic pain during the procedure, but also as to Palletta's first-hand knowledge of her job. We would ask that the finding of the commission and the circuit court be reversed. We would also, the final issue, I think, takes care of itself out of prospective medical. Tied into the other. Yes, sir. Okay. Thank you, Your Honor. Thank you, counsel. Counsel, you may respond. May it please the Court? My name is Frank Barber. I'm here on behalf of the employer in this case, Jersey Community Hospital. As counsel mentioned, there are two main issues before the Court this morning. The first one is whether or not the commission's decision finding that the manifestation date was in 2006 is against the manifest weight of the evidence. It is our position that that was not against the manifest weight of the evidence, and that the commission was well within its right, as a trier of fact, to determine that that date was the manifestation date. In support of that, the petitioner had shoulder complaints predating 2006. We know this because when she first sought medical treatment on April 4th of 2006 with Dr. Michael McNeer, she gave a history of shoulder complaints approximately a year or two prior to this, developing in severity over time and eventually precipitating her seeking medical treatment with Dr. McNeer. At that visit, she reported two potential causes for her pain. One of these was some kind of weight lifting activity and her exercise activities, which she reported eliciting pain in her shoulder. The other one was her job. Was there any evidence that her shoulder condition in April 2006 significantly affected her ability to perform her job? The doctor made recommendations for changing how she performed the job, specifically alternating hands. Now, it is true she continued to work from 2006 through 2010. It's also true she continued working in 2010 on through the arbitration hearing. She testified at arbitration that she had never actually lost any time from work. So she got a single visit to the general practitioner. There's no evidence that she couldn't do her job. Why is there a manifestation date in 2006 under those circumstances? There is not a single visit. There was additionally x-rays done of the shoulder, and the doctor recommended further treatment, specifically a shoulder injection as well as physical therapy. The petitioner on her own did not follow up. And why the petitioner did not follow up? I thought the facts were that the doctor required no further medical treatment for her shoulder until almost four years later. I'm sorry, the doctor required no further treatment? Right. Or it didn't require any further treatment. The petitioner did not follow up. There's no indication that the doctor said she didn't need treatment in that four years. That's a question of fact in any event for the commission, is it not? Correct. Okay. I'm sorry. Opposing counsel cited three different cases and addressed those extensively in their brief. The first one, Curia Bellwood, is probably the most important here as it lays out the legal rule for determining a manifestation date. Can I ask you a question? Why do we even have to talk about manifestation date if there's no causal connection? You're arguing them in reverse order. If there's no causal connection, it doesn't make any difference what the manifestation date was, does it? No. Okay. So first we've got to settle whether there is a causal connection or that's against the manifest way of the evidence. Then we should talk about whether the manifestation date occurs in 2006 or 2010. Of course. All right. Counsel, following up on Justice Hoffman's comment here and understanding you're going to get causation here. Just in general, can an employer argue no causal connection and at the same time argue that the commission's determination of manifestation date is in error because you cited the Peoria County in your brief and Peoria County states that the Supreme Court defined manifest itself as the date on which both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person. Well, if you're disputing causation and saying that there is a non-work related cause for the individual's injury, how can it at the same time claim that there was a plainly apparent connection between a work related incident and the injury? In other words, can you do both? Can you dispute causation and dispute the manifestation date? I believe you can because they're separate issues. I understand that. Isn't the argument tantamount to the guy saying, I didn't shoot him because I wasn't in the building, but if I did, it was self-defense? I mean, isn't that really what you're arguing? Either there's a causal connection or there isn't. And it's only at that point in time that you begin to talk about manifestation date because if there was no causation, you can't fulfill the requirements for manifestation. Right. It has to be an injury. Of course. And our position is that there is no causal connection. However, we are not guaranteed the outcome of the question of causal connection. Therefore, we have to address any other potential issues. But there is a little bit of a logical inconsistency, you see the point? Of course. You're covering yourself legally, but logically, if it's an outside cause, what does it have to do with the work? I don't suggest you shouldn't argue it. I just suggest you're arguing it in the wrong order. Well, originally the commission decided that she's out on statute of limitations of notice. Correct. And then the circuit court reversed the commission on that. And you're saying the commission was right to begin with. End of story. The commission was right both times. That is our position. The arbitrator found at arbitration hearing that the manifestation date was in April 2006, thus the claim was barred by the statute of limitations and failure to give notice. And you tried to appeal that first decision. However, there was no jurisdiction because the circuit court remanded it to the commission. Correct. And we did, from the circuit court, initially file an appeal, which was dismissed by this court as not timely. Went back down to the commission. The commission then ruled on the issue of causation. So the order of arguments as it's come to you is mainly because of the history. With the commission issuing a decision first on the issue of manifestation date and then second on the issue of causation. So on the issue of causation, obviously you agree with the commission's decision, right? Correct. It's a question of fact. The commission weighed the evidence between two treating doctors. They found Dr. Emanuel to be more credible than Dr. Paletta. This is well within the province of the commission to make such a finding. There is sufficient evidence to support the commission's finding. And although an alternative conclusion could certainly have been reached by the commission, one is not clearly apparent. If there's no further questions, I will rest on the brief. Thank you, counsel. Counsel, you may reply. Just real quickly on the issue of causation. I firmly believe that there's enough clearly opposite findings in terms of the testimony and cross-examination from Dr. Emanuel, petitioner's statements, and then also with the first-hand experience from petitioners treating physicians. Thank you, Your Honor. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. Written disposition shall issue with the clerk.